1

CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Isabel Rose Masanque, Esq., SBN 292673
Sara Gunderson, Esq., SBN 302582
Chris Carson, Esq., SBN 280048
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
isabelm@potterhandy.com


Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer,**<br><br>Plaintiff,<br><br>v.<br><br>**Banneret, LLC**, a California Limited Liability Company;<br>**H & I Foods Inc**., a California Corporation;<br>**The Small Café, LLC**, a California Limited Liability Company; and Does 1-10,<br><br>Defendants. | **Case:** 2:19-CV-01272-ODW-JEM<br><br>**Plaintiff's Reply Brief in Support of Motion for Summary Judgment**<br><br>Date: April 20, 2020<br>Time: 1:30 p.m.<br>Ctrm: 5D (5th Floor)<br><br>Hon. Judge Otis D. Wright, II |

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    PRELIMINARY STATEMENT

Plaintiff does not dispute that the transaction counters and restrooms at the businesses have been remediated. Plaintiff also does not dispute that the Court has already declined to extend supplemental jurisdiction over Plaintiff's state claims and has dismissed those claims. Therefore, the only issues remaining are whether defendants have brought the parking lot into compliance with ADA standards thereby mooting Mr. Langer's request for an injunction and whether Mr. Langer has standing to seek that injunction.

As demonstrated in Plaintiff's moving papers, Defendants have not remediated the parking barriers. Defendants' only defense regarding the remaining non-compliance issues with respect to the designated accessible parking is that there is an additional parking lot at the rear of the building. However, as outlined below, the ADA requires that each parking facility provide a sufficient number of compliant van accessible parking spaces. Moreover, Mr. Langer is an ADA tester who has frequented Long Beach on dozens of prior occasions and has stated an intention to visit the businesses once they have been brought into compliance. Therefore, there are no genuine issues in dispute regarding Mr. Langer's standing to seek an injunction. There is no defense in this case. The Court should grant Plaintiff's motion.

## II.    PLAINTIFF HAS STANDING TO SEEK AN INJUNCTION REQUIRING DEFENDANTS TO PROVIDE AND MAINTAIN ACCESSIBLE PARKING

1

**A. The designated "van accessible" parking spaces at the property remain non-compliant.**

During her expert inspection, Ms. Ward found that the van accessible parking space in the parking lot serving the businesses had striping missing on the left side.[1] Additionally, the length of the accessible parking stalls and access aisle measured less than 18 feet.[2] Under the ADA, the method, color of marking, and length of the parking space are to be addressed by State or local laws or regulations.[3] Accessible parking spaces must be outlined in blue and each parking space must be at least 216 inches (18 feet) in length.[4] Under the ADA, access aisles shall extend the full length of the parking spaces they serve.[5]

Defendants do not dispute the existence of these remaining issues, and instead rely on the fact that there is an additional parking lot at the rear of the building. However, under the ADA, "[w]here more than one parking facility is provided on a site, the number of accessible spaces provided on the site shall be calculated according to the number of spaces required for each parking facility."[6] Here, it is undisputed that the additional parking lot is located at the rear of the building and is completely separate from the parking lot located within the shopping plaza where the Flavor or Punjab and The Small Café are located. Therefore, each of the parking lots must have the required number of compliant van accessible parking spaces.

---

[1] Dkt. No. 66-2 (Pl. SUF), SUF #23.
[2] Dkt. No. 66-2 (Pl. SUF), SUF #24.
[3] 2010 ADA Standards for Accessible Design, Advisory § 502.3.3.
[4] CBC § 1129B4; CBC § 11B-502.2.
[5] 36 C.F.R., Part 1191, Appendix D § 502.3.2.
[6] 36 C.F.R., Part 1191, Appendix B § 208.2.

1

Plaintiff's Reply Brief                    Case: 2:19-CV-01272-ODW-JEM

Moreover, even assuming that the rear parking lot and front parking lot are the same "parking facility" under the ADA, the designated van accessible space in the rear parking lot is non-compliant for several reasons. First, the rear lot has signage indicating that it is reserved for Rite Aid customers only.[7] Second, the designated accessible parking stall in the rear lot measures 112 inches wide and the access aisle measures 92 inches wide.[8] Under the ADA, van accessible parking stalls must be at least 132 inches wide with a 60-inch access aisle.[9] Alternatively, the parking stall can be 96 inches wide if the access aisle is at least 96 inches wide.[10] The van accessible parking stall in the rear parking lot does not comply with either of these configurations.

Second, under the ADA, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted, unless they are less than 2.1%.[11] Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles.[12] Here, the parking stall and access aisle in the rear parking lot have running slopes measuring 3.2% and 2.7%, respectively, and the parking stall has cross-slopes measuring 2.2%.[13]

Thus, the designated van accessible parking in both parking lots serving the restaurant do not comply. Defendants' failure to provide a van accessible parking space is a violation of the ADA.

---

[7] Ex. 2 (Photos by Taylor), p. 1.
[8] Ex. 1 to Reply (Decl. of Taylor) ¶ 5; Ex. 2 (Photos by Taylor).
[9] 36 C.F.R., Part 1191, Appendix D § 502.2, 502.3.1.
[10] 36 C.F.R., Part 1191, Appendix D § 502.2 (Exception).
[11] 36 C.F.R., Part 1191, Appendix D § 502.4.
[12] 2010 ADA Standards for Accessible Design, Advisory § 502.4.
[13] Ex. 1 to Reply (Decl. of Taylor) ¶¶ 6-7; Ex. 2 (Photos by Taylor).

1

Plaintiff's Reply Brief                                    Case: 2:19-CV-01272-ODW-JEM

**B. Defendants H & I Foods, Inc. and The Small Café, LLC have not demonstrated lack of control over the parking lots.**

Defendants H & I Foods, Inc. and The Small Café, LLC claim that they are not liable for the ADA violations in the parking lot because they are only tenants and not owners of the real property and have no authority to alter the parking lot areas. The Ninth Circuit's decision in *Kohler* addressed a tenant's liability for violations found in common areas, such as parking lots.[14] Importantly, *Kohler* does <u>not</u> hold that tenants never have liability for violations found in common areas, such as parking lots. *Kohler* also does <u>not</u> hold that tenants never have control over common areas, such as parking lots. Instead, the court in *Kohler* explains that tenants do not have any pre-existing control over a property: "Absent a lease, [a tenant] lacks any legal relationship at all to the property."[15] However, where a tenant "takes control of a part of the property, subject to a lease, imposes ADA obligations on it [the tenant] for that part of the property it controls…"[16]

Thus, to determine whether a tenant has control over, i.e. a legal relationship with, a portion of the property, we must look to the lease. In *Kohler*, the defendant leased only the cell phone kiosk in the shopping center's lobby and the parking lot was identified in the lease as a common area exclusively under the landlord's control. Because it never gained control over the parking lot pursuant to its lease, "BB&B has no liability to contract away on parts of the parking lot over which it has no control."[17] However, this is not the same as a tenant having no *contractual* "authority" to make modifications to the property over which the tenant did gain control pursuant to a lease. To demonstrate these principles, it is important to

---

[14] *Kohler v. Bed Bath & Beyond of California*, LLC, 780 F.3d 1260 (9th Cir. 2015).
[15] *Id.* at 1264.
[16] *Id.*
[17] *Id.*

1

understand that the Ninth Circuit's decision in *Kohler* did not alter the court's holdings in *Botosan*. In *Botosan*, the court makes clear that the "allocation of responsibility between the landlord and a tenant by lease is effective only as between the parties."[18] In *Kohler*, the Ninth Circuit reiterates that the ADA continues to impose "concurrent obligations on landlords and tenants."[19]

Here, Defendants H & I Foods, Inc. and The Small Café, LLC have not demonstrated that they lack control over the parking lot areas. That they do not have contractual authority to make modifications to the parking lot areas is not sufficient and they are not automatically absolved from liability because they are tenants and not the real property owners. Neither Defendant has shown that the parking lot is not included in their lease.

## C. Defendants have a separate and ongoing obligation under the ADA to maintain the accessibility of the parking.

Even if the defendants properly prove remediation, this is insufficient to establish mootness. In the present case, one of the violations – failure to provide and maintain accessible parking – is of the type that constantly recurs. "[T]he test for mootness…is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant free to return to his old ways."[20] Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[21] A claimed remedy "might become

---

[18] *Botosan v. Paul McNally Realty*, 216 F.3d 832, 833 (9th Cir. 2000).
[19] *Kohler v. Bed Bath & Beyond of California, LLC,* 780 F.3d at 1264.
[20] *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203-04 (1968) (citation and internal punctuation omitted).
[21] *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

Plaintiff's Reply Brief                                    Case: 2:19-CV-01272-ODW-JEM

moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."[22] The party asserting mootness has "the heavy burden of persuading the Court that the challenged conduct cannot be reasonably expected to recur."[23] One court, presiding over an ADA case, summarized the standard as follows:

> The burden of establishing mootness by voluntary compliance is a heavy one. A request for prospective relief can be mooted by a defendant's voluntary compliance if the defendant meets the "formidable burden" of demonstrating that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Such a burden will typically be met only by changes that are permanent in nature and that foreclose a reasonable chance of recurrence of the challenged conduct.[24]

As outlined in Plaintiff's moving papers, the ADA also requires public accommodations to maintain the usability of the accessible features of their facility. "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily achievable to and usable by persons with disabilities . . .."[25] Merely because a handicap parking space has now been freshly painted again, does not mean that it will also not be permitted to fade away or be painted over once the smoke clears from this case. This is particularly true where the defendants have a proven history of failing to maintain their accessible parking spaces in a usable condition. Because the parking lot striping will fade and will need to be repainted every few years, it is very easy for the defendants to return to their previous ways and not provide a compliant parking space. Parking painting is not permanent and always in flux. It is

---

[22] *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167 (2000).
[23] *Id.*
[24] *Tandy v. City of Wichita,* 380 F.3d 1277, 1291 (10th Cir. 2004) (internal cites and quotes omitted for readability).
[25] 28 C.F.R. § 36.211(a).

1

uncontestable that failure to maintain parking lot striping is one of those frequently occurring, easily recurring violations and where a defendant has demonstrated a past apathy toward its legal obligations and a failure to comply with the law, a "voluntary" fix after being hauled into court does not meet the "formidable burden of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur."[26]

Thus, if the Court finds that there was a parking lot violation and the violation was the result of a failure to maintain the lot properly, the Court can certainly order the defendant to maintain the parking lot in compliance with the ADA accessibility standards. See *Lozano v. C.A. Martinez Family L.P.,* 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015) (finding ADA claim not moot because "[d]efendants could run afoul of the ADA in the future by mere inaction and allowing the paint on the accessible spaces to fade").

### D. Mr. Langer has sufficiently demonstrated standing for an injunction under the ADA.

Finally, Defendants challenge Mr. Langer's standing for an injunction. First, Defendant claims that Mr. Langer never attempted to park on the date of his visit. However, Mr. Langer *could not* park on the date of his visit because the parking was not accessible. As Mr. Langer explains, because the access was sloped and also too narrow, Mr. Langer had no area to deploy his ramp and he could not park. The idea of parking in a standard stall, further away from the entrance, and hoping that no one parked in the stall next to him—thereby trapping him out of his vehicle—gave him great discomfort and he chose not to risk it.[27] And Mr. Langer was not required to risk parking in a non-complaint parking space. Under *Chapman* court held that "the

---

[26] *Friends of the Earth, Inc.*, 528 U.S. at 190.
[27] Dkt. No. 66-2 (Pl. SUF), SUF #11.

1

ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a plaintiff's disability, it **will** impair the plaintiff's full and equal access" and "constitutes 'discrimination' under the ADA."[28] Because Mr. Langer personally encountered the non-compliant parking conditions, he suffered an injury in fact.

Second, Defendant emphasizes that Mr. Langer does not live in Long Beach and therefore the Flavor of Punjab and the Small Café are far from Mr. Langer's home. However, as the case law makes clear, this is not the only way in which a plaintiff can prove standing. In *CREEC*, the Ninth Circuit held that a plaintiff suing under Title III of the ADA can claim tester standing, which Defendant acknowledges.[29] Additionally, in *D'Lil*, the court held that that "we have found actual or imminent injury sufficient to establish standing where a plaintiff demonstrates an intent to return to the geographic area where the accommodation is located and a desire to visit the accommodation if it were made accessible."

Defendants claim that plaintiff's motion is "devoid of any supporting facts indicating an intent to return to Long Beach."[30] To the contrary, Mr. Langer has provided all of the facts necessary to establish standing under *D'Lil* and *CREEC*. In his declaration, Mr. Langer explains: "[O]nce it has been represented to me that the barriers at the Flavor of Punjab and the Small Café have been removed, I plan to visit both places again to eat. I will also return to assess the businesses for compliance with disability access laws."[31] He also states: "I am in Long Beach often to eat, shop and attend

---

[28] *Id.* (emphasis added).
[29] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,* 867 F.3d 1093 (9th Cir. 2017); Dkt. No. 75 (Def. Opposition) p. 71:1-6.
[30] Dkt. No. 75 (Def. Opposition) p. 21:14-17.
[31] Dkt. No. 66-4 (Decl. of Langer) ¶ 14.

1

events. Additionally, because I am an active ADA litigator, my efforts to identify law-breaking businesses also brings me to this geographical area on a continuing and ongoing basis."[32] Defendants have not provided any evidence to dispute these facts. Therefore, it is indisputable that Mr. Langer has standing as a tester; that he intends to return to Long Beach to eat the restaurants once made accessible; and that he also is in Long Beach on a regular basis. In sum, Mr. Langer's standing for an injunction under the ADA is undisputed.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant his motion in its entirety.

Dated: April 27, 2020              Center for Disability Access


                                   By:   */s/ Isabel Rose Masanque*
                                         Isabel Rose Masanque
                                         Attorneys for Plaintiff

---

[32] Dkt. No. 66-4 (Decl. of Langer) ¶ 15.

1